DRASHA (STEWART v.). See Case No. 13,-424.

DRAY v. The RAJAH. See Case No. 11,538.

## Case No. 4,074.

### DRAYTON v. UNITED STATES.

[1 Hayw. & H. 369.] [1]

Circuit Court, District of Columbia. Feb. 19, 1849.

LARCENY OF SLAVES—TRIAL—PEREMPTORY·CHALLENGES—PRESUMPTIONS OF SLAVERY.

1. Inducing slaves to go aboard a vessel under a promise to be transported into a free state, *held* not to be larceny under an indictment charging defendant with stealing, taking, ·and carrying away slaves under the act of Maryland, 1737, c. 2, § 4.

2. *Held*, also, that the right to peremptory challenge did not exist, because the offence, as alleged in the indictment under the Maryland act, was not a capital offence, that the act of congress known as the penitentiary act made the said offence punishable by imprisonment.

3. That color is a prima facie evidence of slavery, but it is a presumption that could be overcome by proof to the contrary.

At law. Writ of error from the criminal court. Indictment for stealing, taking and carrying away two negro slaves of the good ; and chattels, property and slaves of one Andrew Hoover, under act of assembly of Maryland, 1737, c. 2, § 4.

James W. Carlisle, Horace Mann, R. Hildreth and D. A. Hall, for prisoner.

P. B. Key and Jos. H. Bradley, for the United States.

Criminal Court, July 27th, 1848. Before the jury was sworn Mr. Mann moved that, as the government had framed two sets of indictments, the court should direct the attorney for the United States to elect which set of cases he should try, and that after so doing an entry of acquittal should be made on the other cases. After argument by the district attorney; the court decided that it could not direct the district attorney to elect, although personally he was opposed to the practice, which had been unbroken in this court. Lewis Winter was called by the district attorney to prove a proposition made by the prisoner to a third party. Mr. Carlisle objected to the evidence. Mr. Key urged its admissibility on the ground of showing the intention of the prisoner. The court ruled the evidence to be inadmissible. At the close of the case for the United States, Mr. Mann opened the case for the defence. In the midst of the argument he read a part of a

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

speech from Senator Foote, of Mississippi, in which the senator had spoken of the French revolution as holding out to man a bright promise of the universal establishment of civil and religious liberty. Mr. Mann had scarcely finished the extract when the judge remarked, "A certain limit is to be allowed counsel in this case, but I cannot permit a harangue against slavery." Mr. Mann explained the course and point of his argument. The judge stated the argument was legitimate, but he objected to the inflammatory matter introduced into the statement of it. After seeing the paper in which the remarks of Mr. Foote was printed, Mr. Mann was allowed to proceed.

After closing the case for the defence, Mr. Mann submitted, among his propositions of law, the following: 1st. Servitude of the slave must be proved, not by the mere statement of the master, but by such circumstances as will bring it within the constitution of the United States, the several acts of Maryland and acts of congress establishing slavery in the District of Columbia, citing act of Maryland, 1715, c. 44, § 22 [1 Laws Md. 115]; 1783, c. 27; 1794, c. 66; 1796, c. 67, § 1; 1798, c. 76; Lee v. Lee, 8 Pet. [33 U. S.] 44; Rhodes v. Bell, 2 How. [43 U. S.] 397. 2d. That to make out a larceny it must be proved that a trespass has been committed within the body of the county by taking the slave from the master's possession. 3d. That the going of the slaves on board the prisoner's vessel in this county, if proved, is no proof that such going on board was with the knowledge and counsel of the prisoner. 4th. That the going on board the prisoner's vessel, if proved, &c., is no proof of larceny unless such going on board was by the procurement of the prisoner. 5th. That the going of the slaves on board of the prisoner's vessel within the county, even if such going on board was with the knowledge and consent and by the procurement of the prisoner, is not such a taking sufficient to charge the prisoner with stealing unless it be also proved that the prisoner knew them to be slaves, citing Birney v. State, 8 Ohio, 230; 1 Russ. Crimes, 435; King v. Burnel, 2 Leach, 588; Rex v. Burridge, 3 P. Wms. 439. 6th. That color is not sufficient evidence of slavery to raise a presumption that the prisoner knew them to be slaves. Citing State v. Dillahunt, 3 Har. [Del.] 551; Scott v. Williams, 1 Dev. 376. 7th. If the prisoner found the slaves on board of his vessel, without any previous act or knowledge on his part, even a subsequent conversion to the prisoner's use would not support a charge of stealing, for the want of a criminal taking. Citing State v. Hawkins, 8 Port. [Ala.] 461; Rex v. Van Muyen, Russ. & R. 118; State v. Hall, Tayl. (N. C.) 126. 8th. That the statute of 1796 virtually repealed the act of 1737 under which these indictments are framed.

Mr. Key replied, relying upon the evidence and upon the decision in this court in the case of the United States v. Lee [Case No. 15,587].

Upon the 1st point the court said: "The ownership of a slave on a trial for stealing him must be proved precisely as the ownership of any other piece of property. It is not necessary to do more than to establish generally that he is owned by the alleged owner, and is held and possessed as such by said owner." The 2d, 3d and 4th were granted by the court. Upon the 5th the court said: "It is not necessary that the prisoner should have positively known the slaves alleged to have been stolen to be such. If it were, there never could be a conviction, for such knowledge, if it existed, could not be proved, much less that he should have known them to be Andrew Hoover's slaves. It is sufficient if the jury find from the evidence that they did not belong to the prisoner, and that he had reason to believe that they belonged to some one else, and that he was violating the rights of property of a citizen or citizens of this District, and in point of fact did so violate them." Upon the 6th: Color is sufficient evidence of slavery, but can be easily repelled by proof. The 7th is granted by the court. Upon the 8th, the court said: "I do not think that, to constitute stealing, the original taking away must be with the intent to convert the slave to the prisoner's use, and to derive a profit, advantage and benefit to himself from such use. The stealing must be felonious. The definition of larceny is, 'the felonious taking and carrying away the goods of another'. This definition must be used in construing the act of Maryland, 1737, c. 2. Statutes must be construed by and out of themselves, but when they use terms known to the common law, you must resort to the common law to see what the terms mean. Felonious taking, is the taking animo furandi, or, as the civil law expresses it, 'lucri causa.' This desire of gain, the court is of opinion, need not be to convert the article stolen to his, the taker's, own use, nor to obtain for the thief the value in money of the thing stolen. If the act is felonious and is prompted by the desire to obtain for himself, or another even, other than the owner, a money gain, or any other inducing advantage or dishonest gain, it is, in my judgment, a larceny. The act of Maryland of 1737, so far as it relates to slaves, is not repealed by the act of 1796, c. 87, § 19."

The counsel for the defence took exceptions to some of the rulings of the court.

After the conclusion of the argument for the government, Mr. Carlisle argued that the facts in the evidence would not justify a conviction for larceny under the act of Maryland, 1737, but of transportation of slaves under the act of Maryland of 1796.

After the case was argued by the district attorney, it was given to the jury, who brought in a verdict of guilty.

August 9th, 1848. The following motion was made by Horace Mann and Carlisle: "Daniel Drayton, the defendant on forty-one indictments for larceny, found at the present term of this court, and now pending, which said indictments are now on the docket, Nos. from 90 to 130 inclusive, and being also defendant in 74 indictments for misdemeanors found at the same term and now pending, Nos. from 216 to 289 inclusive, having been tried and convicted on indictments Nos. 118 and 119 for larceny, and having taken exceptions to certain matters of law upon the said trial, and having been brought out of jail, where he is a close prisoner in default of bail to answer said indictments, and now being in court attended by his counsel, the district attorney proposes to pass by the remaining indictments against him, and proceed to the trial of another prisoner; and the said Daniel Drayton thereupon offers himself ready for trial upon each and every of the said 113 indictments, and claims that unless there be sufficient legal cause for postponement or continuance, the said trials be proceeded in; and thereupon the district attorney states and gives notice to the court and to the prisoner, that he claims the right to continue, and does direct the continuance of the said 113 indictments, one and all, to the December term of this court, on the grounds that the prisoner has reserved exceptions to the decision of the criminal court, on several maters of law arising on the said trials of the indictments Nos. 118 and 119; and thereupon the prisoner resists the said continuance, and claims and demands, as a constitutional right, that he be tried on the said remaining indictments at the present term, there being no legal and sufficient cause for the continuance suggested by the district attorney for the United States. And he gives the court to understand that the amount of bail demanded of him in the said remaining cases is about $100,000; so that, if the exceptions taken by him in the cases tried should be allowed by the circuit court at its October term, so that he could be bailed, then the continuation of the remaining 113 cases would unjustly and arbitrarily confine him a close prisoner in jail until the December term of the court, the amount of bail being wholly beyond his ability; and further gives the court to understand that each and every of the said 113 cases opens to him a distinct defence, and that he may altogether lose the benefit of witnesses necessary to his defence therein if the said cases be continued." Refused by the court.

The plaintiff in error was at the June term of the criminal court convicted of stealing two slaves, the property of Andrew Hoover. The act under which he was convicted was that of Maryland, 1737, c. 2, § 4.

Upon the trial of the case, Drayton claimed the right to challenge peremptory twenty jurors. During the trial he prayed the court to give ten certain instructions to the jury, the instructions being to the effect that the offence was not larceny. These were refused by Judge Crawford, and after the trial he moved for an arrest of judgment. This motion Judge Crawford overruled. To all these decisions the defendant excepted, and the judge signed and sealed the following bills of exceptions:

"1st. After the prisoner pleaded not guilty, and a jury being called to try him on the second indictment and plea, and William H. Perkins on the panel having been called to the book, the prisoner challenged him peremptorily. Which peremptory challenge the court overruled and refused to allow the prisoner the right of peremptory challenge, and allowed the said juror to be sworn, no cause of challenging by him having been shown, or why the said person should not be sworn.

"2d. The prisoner by his counsel prayed the court to instruct the jury as follows: 'That in order to convict the prisoner on this indictment the servitude of the persons alleged to have been stolen must be proved, not by the mere claim to hold them as slaves or possession of them as such, but by the evidence of such facts as will bring them within such clauses of the constitution of the United States and such enactments of congress, if any, as authorize slavery in the District of Columbia;' which instruction the court refused to give, but instructed the jury as follows: 'The ownership of a slave on a trial for stealing is to be proved precisely as the ownership of any other piece of property. It is not necessary to do more than to establish generally that he is owned by the alleged owner, and is possessed and held as his slave by said owner.'

"3d. The prisoner prayed the court to instruct the jury as follows: 'That the going of the slaves in this indictment mentioned on board the prisoner's vessel within this county, when, if such going on board was with the knowledge and consent and by the procurement of the prisoner, is not, however, a taking sufficient to charge the prisoner with stealing unless it be also proved that the prisoner knew them to be slaves.' Which instruction the court refused to give, but instructed the jury as follows: 'It is not necessary that the person should have positively known the slave alleged to have been stolen to have been such. If it were, there could never be a conviction, for such knowledge, if it existed, never could be proved, much less that he should have known them to be Andrew Hoover's slaves. It is sufficient if the jury find from the evidence that they did not belong to himself, and that he had reason to believe they belonged to some one else, and that he was violating the rights and property of a citizen of this District, and in point of fact did so violate them.'

"4th. The prisoner prayed the court to instruct the jury as follows: 'That color is no sufficient proof of the slavery of the persons

charged in the indictment to be slaves.' Which instruction the court refused to give, but in lieu thereof instructed the jury as follows: 'Color is prima facie evidence of slavery in this District; but the presumption may be and is easily repelled by proof that the negro passes as free, which being made the parties would be put to direct evidence.'

"5th. The prisoner prayed the court to instruct the jury as follows: 'That to convict the prisoner of stealing as charged the jury must find from the evidence aforesaid that he took the slaves as charged, and that the original taking was with intent to convert the slaves to his (the prisoner's) own use, and to derive a profit, advantage or benefit to himself from such conversion.' Which instruction the court refused to give, and instructed the jury in lieu thereof as follows: 'That to convict the prisoner as charged the jury must find from the evidence that he took the slaves as charged; but I do not think that to constitute stealing the original taking away must be with intent to convert the slave to the prisoner's use, and to derive a profit, advantage and benefit to himself from such use. The stealing must be felonious taking and carrying away the goods of another. This definition must be used in construing the act of Maryland of 1737, c. 2, § 4. Statutes must be construed by and out of themselves, but when they use terms known to the common law you must resort to the common law to see what those terms mean. Felonious taking is taking away animo furandi—as the civil law expresses it, "lucri causa." This desire of gain, the court is of opinion, need not be to convert the article stolen to his, the taker's, own use, nor to obtain for the thing the value in money of the thing stolen. If the act is felonious and is prompted by a desire to obtain for himself or another even, other than the owner, or money gain, or any other inducing advantage a dishonest gain, it is in my judgment a larceny.'

"6th. And thereupon the prisoner prayed the court to instruct the jury as follows: 'That the transportation of a slave, with a view to assist him to escape out of slavery, is not such a conversion as will constitute stealing in this District,' which instruction the court refused to give, but in lieu thereof instructed the jury as follows: 'The mere transportation of a slave with the view to assist him to escape out of slavery is not stealing in this District. But if such transportation be preceded, in the judgment of the jury, by a seduction of the slave from his duty, and a corrupt influence on his mind, which induced him to comply with the desire of his seducer that he should leave his master and go with him, it would, thus accompanied, if the taking were felonious, be a larceny.'

"7th. The prisoner then prayed the court to instruct the jury as follows: 'That to

entice or persuade a slave to run away from his master, even if such slave shall actually run away, is not stealing in this District, but is a separate and distinct offence; and if the jury find that to be the offence of the prisoner upon the evidence aforesaid, they must acquit him upon this indictment;' which instruction the court refused to give, but in lieu thereof instructed the jury as follows: 'Merely to entice a slave to run away without further action on the part of the enticer is not larceny. Although the slave should run away, if the jury so believe from the evidence, the defendant ought to be acquitted; that is barely enticing without any felonious carrying away, and that is, the court thinks, what the law of 1751 was intended to guard against.'

"8th. And thereupon the prisoner prays the court to instruct the jury as follows: 'That to assist, by advice, donation, loan or otherwise, the transportation of a slave from this District, or by any other unlawful means depriving a master of the services of his slave, is not stealing, but a distinct and separate offence, and the prisoner cannot be convicted thereof on this indictment.' Which instruction the court refused to give, but in lieu thereof instructed the jury as follows: 'The remarks made in answer to the preceding prayer apply to this one. Merely to transport a slave, or to assist in transporting a runaway slave, is not larceny if it stands alone; but if it be preceded by a corruption of the slave's mind, by artful means decoying him away, and then feloniously taking him out of the possession of his master and transporting him, it is larceny.'

"9th. The prisoner thereupon prays the court to instruct the jury as follows: 'That the act of 1737, c. 2, so far as it relates to the stealing of slaves, is superseded and repealed by the act of 1796, c. 67, § 19.' Which instruction the court refused to give, but in lieu thereof instructed the jury as follows: 'The court does not think the act of 1737, c. 2, § 4, is repealed as to slaves by the act of 1796, c. 67, § 19.'

"10th. And thereupon the prisoner prayed the court to instruct the jury as follows: 'That in order to convict the prisoner on this indictment, it is not sufficient that the jury find from the evidence aforesaid that the prisoner did in fact take and carry away the slaves mentioned in the indictment from and out of the possession of the owner and against his consent, but they must further find from the evidence aforesaid that the taking was with a felonious intention; otherwise they must acquit him of the alleged larceny.' Which instruction the court refused to give as prayed, but gave the same with the following qualification: 'This prayer is granted with the addition that a felonious taking is a taking animo furandi, or as the civil law terms it, "lucri causa," with the desire of making dishonest gain, as before explained in answer to prayer 8.'

"11th. And thereupon the prisoner prayed the court to instruct the jury as follows: 'That if the jury find from the evidence aforesaid that the two slaves mentioned in the indictment were runaways and that the prisoner, having the control of the schooner Pearl, by an agreement with her master, did receive the said runaways on board of her, with intent to transport them beyond the limits of the county of Washington, in the end that they should escape from their owners and go to a state where slavery does not exist, and did in fact so transport them with the intent aforesaid beyond the limits of the said county, then the offence of the prisoner is that which is provided for in the act of assembly of Maryland, 1796, c. 67, § 19, and is not larceny, and he cannot be convicted thereof upon this indictment.' Which instruction as prayed the court refused to grant, but gave the same with the following qualification: 'This is granted with the addition that if the jury believe from the evidence that the prisoner, before receiving the slaves on board, imbued their minds with discontent, persuaded them to go with him, and by corrupt influence and inducements caused them to come to his ship and feloniously took and carried them down the river, he would be guilty of larceny.' To which refusal to instruct as prayed, and to the qualification added by the court in giving the same, the prisoner excepts and prays, &c. Which is done (with the other bills of exceptions) this 2d Aug., 1848.

"T. Hartley Crawford."

Mr. Hildreth opened the case by stating they would confine their arguments to seven points:

1st. That the act of Maryland of 1737 was repealed in fact by the act of 1790. This latter act applies only to aiding and abetting slaves to escape from slavery; that this act by implication repealed the act of 1737, and cited in support of it Nichols v. Squire, 5 Pick. 168; Com. v. Kimball, 21 Pick. 373; Com. v. Cromley, 1 Ashm. 179; U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 95.

2d. The act of 1737 makes the offence punishable with death. The act of congress commonly known as the Penitentiary Act makes all offences punishable with death (except treason, murder and piracy) punishable with imprisonment in the penitentiary. Judge Crawford decided that the reason why a right to challenge peremptory was allowed by the act of 1737 was that the offence by that act was capital; and that as the act of congress took away the reason of the right, therefore the right was also taken away, that this decision was unfounded in the strict law of construction, and therefore it should be overruled.

3d. That color is not a presumption of slavery. Judge Crawford refused to give this instruction, but said color is prima facie evidence of slavery in this District, but it is a presumption that can be easily repelled by proof that the negro passes as a free man, which being made, the parties alleging or denying, would be put to positive or direct proof as in other questions. This was not law, and cited 7 La. (2d series) 619; Adelle v. Beauregard, 1 Mart. [La.] 183; 1 Dev. 376; 3 Har. [Del.] 551.

4th. That in order to convict the party of stealing, the servitude of the person alleged to be stolen must be proved, not by the mere claim of the master to hold them as his slaves, or by possession of them as such, but by evidence of such facts as will bring them within such clause of the constitution of the United States and such acts of congress, if any, as authorize slavery in the District of Columbia. In the trial below Judge Crawford declined laying down the law in this manner, and ruled upon this point as follows: "The ownership of a slave on a trial for stealing him is to be proved, as the ownership of any other piece of personal property is to be proved. It is not necessary to do more than to establish, to the satisfaction of the jury that he is owned by the alleged owner, and is possessed and held as his slave by said owner." Mr. Hildreth referred to the acts of Maryland, 1783, 1784, 1796 and 1798, restricting the immigration of slaves into the state, and that unless Hoover's slaves were in the District prior to 1783, or children of slaves here prior to that time, they were not subject to larceny, and that the United States should have been held to proof that these slaves came under this class.

5th. That the prisoner to be convicted, it must be proven that he knew the slaves to be such at the time of taking them, citing 3 Ohio; Nelson v. Whetmore, 1 Rich. Law, 318.

6th. That to constitute the offence of larceny the taking must be proved to have been a taking with an intent to convert to the taker's use. Judge Crawford ruled on this point: "That to convict the prisoner of larceny the jury must find that he took the slaves as charged, but I do not think that to constitute stealing, the original taking away must be with the intent to convert the slaves to the prisoner's use, and to derive a profit, advantage and benefit to himself from such use. The stealing must be felonious. The definition of larceny is the felonious taking and carrying away the goods of another. This definition must be used in construing the act of 1737, but when they use terms known to the common law, you must resort to the common law to see what those terms mean. Felonious taking is 'taking animo furandi'—as the civil law expresses it, 'lucri causa.' This desire of gain, the court is of opinion, need not be to convert the article stolen to his (the taker's) own use, not to obtain for the thing the value in money of the thing stolen. If the act is felonious, and is prompted by a desire to obtain for himself

or another even, other than the owner, a money gain, or any other inducing advantage, a dishonest gain, it is in my opinion a larceny. If a transportation of a slave is preceded by a seduction of the slave from his duty, and a corrupt influence on his mind which induces him to comply with the desire of his seducer, that he should leave his master and go with him, and by corrupt influences and inducements caused them to come to his ship and feloniously took and carried them down the river, he would be guilty of larceny."

Mr. Hildreth cited: 1 Archb.; 2 East, P. C. c. 16, § 2503; 2 Luce, 1089; Rex v. Cabbage, Russ. & R. 293; Rex v. Morfit, Id. 307. Nowhere, he said, did the legislation of the slave states go so far as to make slave stealing anywise different from the stealing of any other property.

7th. That slavery has no legal existence under the constitution, and congress has no power to recognize or legalize it.

November 28th, 1848. Mr. Key followed in reply, but as he was about commencing Judge CRANCH informed the counsel for the case that the following points presented by the counsel for Drayton, viz.: (1) That a prisoner had a right to peremptorily challenge twenty jurors; (2) that color is not prima facie evidence of slavery; (3) that slavery has no legal existence in this District; had been so often decided (negatively) in this court that no further argument would be heard on them.

Mr. Bradley followed Mr. Key on the same side.

November 29th, 1848. Mr. Mann addressed the court in behalf of the plaintiff in error, and confined himself to the four points left for discussion.

November 30th, 1848. Mr. Mann finished his argument.

February 19th, 1849. The great principle involved in this case was the correctness of the definition of larceny given by the judge of the criminal court in the fifth exception, and on which several of the other exceptions were based. Judges CRANCH and MORSEL united in reversing the decision of the court below upon this and the other points dependent thereon, and Judge DUNLOP delivered his opinion, differing from the court and sustaining Judge Crawford.

The following is the order of the court: Said cause having been brought to this court by writ of error, and now coming on to be heard on the transcript of the record from the criminal court, and after argument of counsel, and after mature consideration thereon, the judgment of the criminal court in this cause is hereby reversed because the court below erred in the following particulars, viz: 1st. In giving the instructions stated in the second bill of exceptions. 2d. In giving the instructions stated in the third bill of exceptions. 3d. In refusing to give the instructions prayed by the prisoner as stated in his fifth bill of exceptions, and in giving the instruction therein stated. 4th. In giving the instructions stated in the prisoner's sixth bill of exceptions. 5th. In giving the instruction stated in the prisoner's eighth bill of exceptions. 6th. In refusing to give the instructions prayed by the prisoner as stated in his tenth bill of exceptions, and in giving the instruction in lieu of it as stated in the same bill of exceptions. 7th. In refusing to give the instructions prayed by the prisoner as stated in his eleventh bill of exceptions, and in giving the instruction in lieu of it as stated in the same bill of exceptions. It is therefore ordered, that the judgment of the said criminal court in this cause be and the same is hereby reversed for the reasons aforesaid, and that this cause be and the same is hereby remanded to the said criminal court with directions to award a venire facias de novo.